SYKES, Circuit Judge,
dissenting.
I part company with my colleagues based on the narrow scope of our review. This case is governed by the Illinois Uniform Arbitration Act (“LAA”). Like its federal counterpart, the IAA permits only very limited judicial review. A court may vacate an arbitration award only if the arbitrators “exceeded their powers.” 710 III. Comp. Stat. 5/12(a)(3). The Federal Arbitration Act (“FAA”) uses identical language, see 9 U.S.C. § 10(a)(4), and the statutes share the same origin (the Uniform Arbitration Act), so the state statute has long enjoyed parallel construction with the federal. J & K Cement Constr., Inc. v. Montalbano Builders, Inc., 119 Ill.App.3d 663, 75 Ill.Dec. 68, 456 N.E.2d 889, 893 (1983); Rexnord Indus., LLC v. RHI Holdings, Inc., 389 Ill.App.3d 393, 329 Ill.Dec. 484, 906 N.E.2d 682, 684 (2009); Cook County v. Am. Fed’n of State, Cnty. & Mun. Emps., Local 3315, 294 Ill.App.3d 985, 229 Ill.Dec. 304, 691 N.E.2d 777, 780 (1998).
In its seminal decision on judicial review of arbitration awards, the Illinois Supreme Court held that “an arbitrator’s award will not be set aside because of his errors in judgment or mistakes of law or fact.” Garver v. Ferguson, 76 Ill.2d 1, 27 Ill.Dec. 773, 389 N.E.2d 1181, 1183 (1979). Garver continues:
The fact that arbitrators have made an erroneous decision will not vitiate their award. If they have acted in good faith, the award is conclusive upon the parties; and neither party is permitted to avoid it[] by showing that the arbitrators erred in their judgment, either respecting the law or the facts of the case.
Id. (quoting Merritt v. Merritt, 11 Ill. 565, 567 (1850)), Finally, Garver explains that “[wjhenever possible a court must construe an [arbitration] award so as to uphold its validity, and gross errors of judgment in law or a gross mistake of fact will not serve to vitiate an award unless these mistakes or errors are apparent upon the face of the award.” Id.,Id., 27 Ill.Dec. 773, 389 N.E.2d at 1184 (citation omitted). Later cases are in accord. See, e.g,, Rauh v. Rockford Prods. Corp., 143 Ill.2d 377, 158 Ill.Dec. 523, 574 N.E.2d 636, 641 (1991).
We’ve said much the same thing when describing the scope of judicial review under the FAA. Almost three decades ago we *734 explained that a gross error in interpreting the parties’ contract will not suffice to vacate an arbitration award, but a plainly gross misinterpretation might, in an appropriate case, support a conclusion that “the arbitrators weren’t interpreting the contract at all.” Hill v. Norfolk & W. Ry. Co., 814 F.2d 1192, 1194-95 (7th Cir.1987). As we put it more recently, a court may vacate an arbitration award only when “the arbitrators’ interpretation was ‘so wacky that it was no interpretation at all.’ ” Prostyakov v. Masco Corp., 513 F.3d 716, 723 (7th Cir.2008) (quoting Tice v. Am. Airlines, Inc., 373 F.3d 851, 854 (7th Cir.2004)).
This heightened degree of deference is essential to enforce the private ordering reflected in the parties’ choice to resolve their disputes in arbitration. “[T]he parties have chosen in their contract how their dispute is to be decided, and judicial modification of an arbitrator’s decision deprives the parties of that choice.” Tim Huey Corp. v. Global Boiler & Meek, Inc., 272 Ill.App.3d 100, 208 Ill.Dec. 697, 649 N.E.2d 1358, 1362 (1995).
Predictably then, the circumstances under which Illinois courts have been willing to vacate arbitration awards have generally been limited to awards that contain what are essentially calculation errors by the arbitrators. See First Merit Realty Servs., Inc. v. Amberly Square Apartments, L.P., 373 Ill.App.3d 457, 311 Ill.Dec. 720, 869 N.E.2d 394 (2007); Shearson Lehman Bros., Inc. v. Hedrick, 266 Ill. App.3d 24, 203 Ill.Dec. 189, 639 N.E.2d 228 (1994). Awards that hinge on an interpretation or application of a particular contract provision have been left undisturbed, even when the arbitrators’ interpretation seems bizarre. See, e.g., Herricane Graphics, Inc. v. Blinderman Constr. Co., Inc., 354 Ill.App.3d 151, 289 Ill.Dee. 843, 820 N.E.2d 619 (2004).
Applying the deferential standard here, I see no basis to vacate this arbitration award. The arbitrators did not exceed their authority in the relevant sense; nothing in the award suggests that their decision wasn’t drawn from the contract. The arbitrators resolved this dispute in three separate steps. The panel issued its merits decision on February 21, 2014; denied a motion for reconsideration on June 3, 2014; and awarded attorney’s fees on July 15, 2014. In the February decision, the panel rejected Bankers’ breach-of-contract claim, focusing mostly on paragraph 19 of the Listing Agreement, which required CBRE to assist Bankers in developing, communicating, negotiating, and presenting offers and counteroffers regarding the Chicago Avenue property. The panel concluded that CBRE could not be liable for the $3.1 million miscalculation in its cost-benefit analysis because the cost-benefit analysis was not an “offer” or “counteroffer” and thus wasn’t covered by paragraph 19. Paragraph 20 of the Listing Agreement— the provision requiring CBRE to “answer questions” about offers and counteroffers — was mentioned but not separately analyzed.
Later, in denying reconsideration, the panel acknowledged that paragraph 20 required CBRE to answer Bankers’ questions about offers and counteroffers, and this implied a requirement of accurate answers. This paragraph, the panel concluded, does cover the challenged cost-benefit analysis (the one containing the $3.1 million miscalculation), but CBRE wasn’t liable for breach because the cost-benefit analysis contained a disclaimer warning that the firm wasn’t responsible for errors.
That may be an erroneous interpretation of the contract, but the decision is plainly grounded in the contract, so we cannot vacate the award. My colleagues say the arbitration panel ignored explicit language *735 in the Listing Agreement and “confused the cost-benefit analyses with the Listing Agreement.” Majority op. at 733. I disagree. The arbitrators quoted and construed the relevant language in the agreement (paragraphs 19 and 20) and clearly understood that the cost-benefit analyses were the “answers” required by paragraph 20 — the bargained-for performance, not the contract itself. On plenary review I might agree with my colleagues that the arbitrators mistakenly read the disclaimer and the agreement together. But the limited judicial review that the IAA permits requires us to uphold an arbitration decision that “draws [its] essence from the parties’ contract,” as this one does. Tim Huey, 208 Ill.Dec. 697, 649 N.E.2d at 1364.
Finally, my colleagues have misapplied Shearson Lehman Brothers. There the Illinois Appellate Court held that when “arbitrators ma[k]e an evident miscalculation of figures in arriving at the award, the reviewing court will modify or correct the award.” 203 Ill.Dec. 189, 639 N.E.2d at 232. But the arbitration panel did not make a calculation error. The arbitrators concluded that CBRE was not liable; there is no miscalculation to modify or correct. Shearson Lehman Brothers does not apply.
Accordingly, however much we might disagree with the arbitrators’ reasoning, we cannot vacate the award. I respectfully dissent.